STATE of Wisconsin, Plaintiff-Respondent,

v.

David Shawn KNAPP, Defendant-Appellant.†

Court of Appeals

*No. 82–267–CR. Submitted on briefs October 4, 1982.—
Decided January 26, 1983.*
(Also reported in 330 N.W.2d 242.)

† Petition to review denied. CALLOW, J., took no part.

For the defendant-appellant the cause was submitted on the brief of *Louis B. Butler, Jr.,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J.   David Knapp appeals from the denial of a motion to vacate his sentence.  We reject the arguments that the sixth amendment entitles an attorney to be present at a presentence interview and that the safeguards created in *Miranda v. Arizona,* 384 U.S. 436 (1966), are applicable at such meetings.  We affirm.

In June 1981, Knapp pled guilty to one count of burglary and resisting an officer.  The trial court, on its own motion, ordered a presentence report and deferred sentencing for thirty days.  Although the decision to call for a report was announced in open court and in the presence of the defense counsel, Knapp's lawyer was not told when the presentence interview was going to take place.  Knapp was subsequently interviewed by a state probation and parole agent.  Knapp's attorney was not

present, and the *Miranda* warnings were not read before commencing the interview.

Review of the report indicates that Knapp connected the use of alcohol to the offenses and said he had been drinking alcohol excessively since the age of sixteen. The agent reported that Knapp gave the impression of being extremely frightened, anxious and unsure of himself and appeared somewhat sickly. The agent specified it was his impression that Knapp was choked up with either fear, anger or remorse, because he did not give a coherent explanation for his actions. He concluded that Knapp had characteristics similar to those with sociopathic personalities. On the basis of the interview and other investigation, the agent recommended that Knapp receive a sentence to the state reformatory.

The report was submitted to and read by the trial judge. In August, the court sentenced Knapp to six years for the burglary conviction and nine months on the resisting an officer charge, the sentences to run concurrently. At sentencing, the trial judge focused not upon the statements made by Knapp to the probation agent, but on the fact that Knapp had, during a short period of time, violated the law repeatedly.

Knapp first argues that the manner in which the presentence interview was conducted, coupled with the trial judge's reading of the report, violated his sixth amendment right to counsel. He contends that *Estelle v. Smith,* 451 U.S. 454 (1981), entitles him to have counsel present at the interview. We acknowledge that sentencing is a critical stage of a criminal prosecution such that a defendant's sixth amendment right to counsel has attached. *State v. Strickland,* 27 Wis. 2d 623, 635, 135 N.W.2d 295, 302 (1965). We do not, however, read *Estelle* to hold that a defendant is entitled to have counsel present at a presentence interview.

*Estelle* involved a murder trial which took place in Texas. In that state, capital cases are tried in bifurcated stages—a guilt phase and a penalty phase. Prior to trial, the trial judge ordered a psychiatric examination of the defendant to determine whether he was competent to stand trial.

After the defendant was convicted, the penalty phase of the trial was conducted. Because it was seeking the death penalty, the state had the burden, under Texas law, to show that the defendant would continue to endanger society. To prove this element, the state introduced the testimony of the psychiatrist who had performed the pretrial examination. He testified that based on his interview of the defendant, it was likely the accused would commit similar criminal acts in the future if given the opportunity to do so.

The Supreme Court set aside the resulting death sentence, ruling that this use of the psychiatric interview violated the defendant's sixth amendment right to counsel. The basis for the Court's ruling was that the defense counsel had not been notified, in advance, that the psychiatric examination would encompass, in addition to the question of competency, the issue of the defendant's future dangerousness. The Court concluded that the defendant "was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed." *Estelle,* 451 U.S. at 471.

The Court did not rule, however, that the sixth amendment entitled counsel to be *present* at the psychiatric examination. Rather, the Court said the crucial factor was whether the state's actions denied the defendant *the opportunity to receive advice* from his attorney before making significant decisions regarding his defense:

[We] are not concerned in this case with the . . . presence of counsel . . . . Rather, the issue before us is whether a defendant's Sixth Amendment right to the assistance of counsel is abridged when the defendant is not given *prior opportunity to consult* with counsel about his participation in the psychiatric examination. . . .

Respondent does not assert . . . any constitutional right to have counsel actually present during the examination. [Emphasis added.]

*Estelle,* 451 U.S. at 470 n. 14.

We see, then, that the *Estelle* Court specifically did not reach the assertion Knapp claims it did and, therefore, cannot be used as authority for his claim. At most, *Estelle* requires that defense counsel be given notice, prior to commencement, of any presentencing interview involving the defendant. That ruling has not been violated here, because Knapp's attorney was given notice. Knapp and his attorney were additionally advised that the report might be used in sentencing. Under these circumstances, counsel had adequate prior opportunity to consult with Knapp concerning participation in the interview. No violation of the *Estelle* edict occurred.

That arguably still leaves open the question of whether defendant also has a constitutional right to have counsel actually present during the interview. In *Estelle,* the Court inferred that had this issue been raised, it would have ruled that there is no constitutional right to have counsel actually present during the psychiatric interview. *Estelle,* 451 U.S. 470 n. 14. The Court said it has been recognized that having an attorney present would contribute little and might seriously disrupt the examination. *Id.* A similar conclusion applies to the conducting of a presentence interview.

The purpose of a presentence report is to assist the judge in selecting the appropriate sentence for the individual defendant. *Neely v. State,* 47 Wis. 2d 330, 334, 177 N.W.2d 79, 81–82 (1970). The sentencing judge has

a twofold responsibility: to the individual found guilty and to the society which criminal laws are intended to protect. *Id.* Highly relevant, if not essential, to his or her selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. *Neely,* 47 Wis. 2d at 334 n. 7, 177 N.W.2d at 82. Having counsel present at the interview might seriously impede the ability of the trial court to obtain and consider all facts that might aid in forming an intelligent sentencing decision.

This is not to say there are no safeguards for the defendant at the sentencing stage. The defense lawyer may counsel his client prior to the presentence investigation. Also, the defense counsel should be given a copy of the report prior to sentencing. Sec. 972.15, Stats. Also, he is entitled to be present at the sentencing hearing to argue in favor of a specific disposition and to dispute information contained in the presentence. Sec. 972.14, Stats. We conclude that there is no constitutional right to have counsel present at the interview conducted as part of the presentence report.

Knapp also contends, again relying on *Estelle,* that his fifth amendment rights were violated because the procedural safeguards created in *Miranda* were not observed at the presentence interview. In *Estelle,* the Court concluded that the *Miranda* warnings were required at the psychiatric examination. Again, however, we take note that the Supreme Court expressly declined to decide whether its fifth amendment discussion extended to "all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination." *Estelle,* 451 U.S. at 469 n. 13. Knapp realizes this constraint, but reasons that the *Miranda* safeguards were required in his case because the interview was to gather information for use at sentencing. This, he claims

has the same purpose as the *Estelle* psychiatric examination, *i.e.*, to gain information ultimately used at the penalty phase of a Texas murder trial. We reject this reasoning.

The *Estelle* Court required warnings because the psychiatrist went beyond simply reporting to the Court his conclusions regarding competency. He also came to a conclusion concerning the crucial issue of the defendant's future dangerousness. *Estelle*, 451 U.S. at 466. The psychiatric interview was directed as much toward obtaining statements helpful to proving the element of dangerousness as it was to determining competency. Because it did, the information elicited was helpful to the state in proving an element upon which it had the burden of proof. The prosecutors of *Estelle*, after all, were accusing the defendant of being a continuing danger. To the extent, then, that the interview was gleaning statements from the defendant on a subject accusatorial in nature—an element upon which the state still had the burden of proof—the warnings were required.

Unlike the situation in *Estelle*, the purpose of a presentence investigation is not to generate evidence to be used by the state in proving an essential element of its case against the accused. Rather, presentence reports are designed to gather information concerning a defendant's personality, social circumstances and general pattern of behavior, so that the judge can make an informed sentencing decision. The interview does not involve the accusatorial atmosphere characterized by the stationhouse confrontation in *Miranda* or the psychiatric examination on "future dangerousness" at issue in *Estelle*. Therefore, the *Miranda* safeguards should not be required.

At least one other court has considered the same question as do we. In *State v. Cawley*, 648 P.2d 142 (Ct. App. Ariz. 1982), the Arizona Court of Appeals also concluded

that the presentence interview, in the case before it, did not warrant *Miranda* warnings because the interview was not accusatorial in nature. Since the reasoning is parallel to our own and well considered, we deem it worthy to quote it at length, with approval:

What is important is that *Miranda* sought to give a defendant fair warning where the coercive atmosphere of the questioning was likely to overbear his desire to remain silent. A pretrial psychiatric examination is part of the accusatory stage of a criminal proceeding. On the other hand, appellant's cooperation with the adult probation office is not an accusatory stage of the proceedings. Rather, it is important that a defendant and the adult probation officer have a relationship which encourages an accurate appraisal of a defendant's social and criminal history and a recommendation for beneficial rehabilitative treatment which will best modify a defendant's behavior to conform to society's requirements.

. . . .

In the instant case, we can say that the questioning was routine and integral part of the sentencing process. If a defendant chooses to cooperate, the interview process offers an offender the opportunity to help the probation officer make a recommendation which would enable a defendant to eventually assume his responsibilities as any other well-adjusted citizen. Our decision is not to be construed to pertain to a situation where the presentence investigation is accusatory in nature and the probation officer has as his mission the investigation of specific criminal activity. Such was not the case here and we are not addressing ourselves to such a situation. We hold that where the presentencing investigation is not accusatory in nature and merely a routine and integral part of the sentencing process, a defendant is not entitled to *Miranda* warnings since the in-custodial coercive atmosphere of *Miranda* is not present and the questioning is not accusatory in nature.

*Cawley,* 648 P.2d at 143–44.

The defendant cites *Jones v. Cardwell,* 686 F.2d 754 (9th Cir. 1982), as authority supporting his thesis. In

*Jones*, the defendant confessed to the commission of several additional crimes during the presentence interview. The statements, included in the final report, were relied upon by the trial judge when sentencing. The federal court of appeals remanded for a new sentencing because the probation agent aggressively sought the confession of additional criminal activity. The defendant, the court said, should have been warned of the consequences. *Jones*, 686 F.2d at 756–57. The *Jones* case only further serves to illustrate the holding we make here today. As the *Cawley* court noted, not all presentence interviews may escape the necessity of advance *Miranda* warnings. If the interview is accusatory in nature, the warnings are required. We do not make a blanket statement that a *Miranda* warning is never required prior to a presentence interview. We do hold that where, as here, the interview is not accusatorial in nature, no warning is required.

*By the Court.*—Order affirmed.