STATE of Wisconsin, Plaintiff-Respondent,†

v.

Brandon M. MELTON, Defendant-Appellant.

Court of Appeals

*Nos. 2011AP1770–CR, 2011AP1771–CR. Submitted on briefs May 5, 2012.—Decided July 17, 2012.*

2012 WI App 95

(Also reported in 820 N.W.2d 487.)

† Petition for Review granted 11/14/12.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kevin M. Gaertner* of Law Shield of Wisconsin, L.L.C. of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Jacob J. Wittwer*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J. Brandon M. Melton appeals from a circuit court order sealing a presentence investigation report ("PSI report"), and modifying a previous

circuit court order directing that the PSI report be destroyed.[1] The narrow issue on appeal is whether a circuit court has the inherent authority to order the destruction of a PSI report under the unique facts of this case. For the reasons set forth below, we conclude that the circuit court does have that authority and reverse the circuit court's order based on its findings to the contrary.

### BACKGROUND

¶ 2. Melton pled guilty to second-degree sexual assault of a child under sixteen years of age and to theft of movable property, resolving three criminal cases. Additional charges for battery, felony bail jumping, and second-degree sexual assault of a child were dismissed but read in during sentencing as part of the plea agreement. The circuit court later ordered the Department of Corrections ("DOC") to prepare a PSI report.

¶ 3. Upon receiving the November 19, 2009 PSI report, Melton moved to strike portions of the report that discussed certain uncharged offenses under a section entitled "Description of Offenses." At a hearing on the motion prior to sentencing, Melton argued that the inclusion of the uncharged offenses was prejudicial and violated DOC rules. The State disagreed. The circuit court, the Honorable Richard Congdon presiding, referenced a letter written by the PSI report writer, in which the writer admitted that inclusion of the information Melton wished to strike from the PSI report " 'may be a deviation of the standard outline.' " When the circuit court asked the State if it agreed that

---

[1] Melton's appeal is comprised of two cases, 2011AP1770 and 2011AP1771, which have been consolidated for purposes of appeal.

inclusion of the information was "somewhat of a deviation from the standard outline," the State responded: "[the PSI report writer] does this every day, you know, I can't disagree with him."

¶ 4. After reviewing Melton's motion, the circuit court determined that the information about the uncharged offenses would be of "little use to the Court at a sentencing." The circuit court then concluded that leaving the objected-to information in the PSI report would be prejudicial to Melton as he went through the "route" (presumably the DOC system after sentencing):

> So, the Court has already made a finding that such information would be of little use to the Court, this information about this other activity, and the Court would find that or believe that it could very well be prejudicial to Mr. Melton as he goes through whatever route is eventually — that the Court will set for him. It will be prejudicial to him. The Court will note that this information is uncharged and unverified except for what — the alleged statements.

¶ 5. The circuit court, citing its inherent authority, issued a written order on March 31, 2010, directing the DOC to prepare a second PSI report, omitting the objected-to information that was included in the first PSI report. The order also directed that the first PSI report "shall be sealed and destroyed following the expiration of any appellate time limits." No party objected to the circuit court's order. The court then collected the attorneys' copies of the first PSI report and placed them in the court file with instructions that they be sealed and could not be opened without permission of the court.

¶ 6. At the start of the sentencing proceeding, Melton's attorney advised the sentencing court, the Honorable Robert Mawdsley presiding, that a new PSI

report had been prepared and was to be used for sentencing. Sentencing proceeded and Melton was sentenced to four years of initial confinement and eight years of extended supervision on the second-degree sexual assault conviction, and to six months of incarceration on the theft conviction, to be served concurrently. Judgments were entered accordingly.

¶ 7. Following sentencing and entry of the judgments, the successor circuit court, the Honorable Mark Gundrum presiding, on its own motion, scheduled a review hearing after discovering the order that the first PSI report be destroyed after the expiration of the appellate time limits. The circuit court advised the parties that it had set the matter for a hearing because it did not believe it had the authority to destroy a PSI report.

¶ 8. Melton's counsel advised the circuit court that Melton had other legal counsel who was pursuing his appeal, and thus, the matter of destruction of the PSI report may be premature. The circuit court found that because it was ordering that the PSI report not be destroyed, the continued pendency of the appeal was irrelevant to its decision.

¶ 9. The circuit court then modified the prior order directing that the first PSI report be destroyed, calling the prior order "inappropriate" and concluding that "keeping [the PSI report] confidential is what is envisioned by the statute." The modified order was identical to the previous order, except that it mandated that the first PSI report be sealed, rather than destroyed. Melton appeals.

## DISCUSSION

¶ 10. This case presents a very narrow issue on appeal. Melton does not challenge his conviction or his

sentence. Rather, he only argues that the circuit court erred as a matter of law when it concluded that it lacked the inherent authority to destroy the first PSI report. Melton seeks a reversal of the modified order directing that the first PSI report be sealed rather than destroyed.

¶ 11. At the time the circuit court entered its order to seal (rather than destroy) the first PSI report, there were two PSI reports in Melton's file: the first PSI report that had been ordered destroyed and the second PSI report that the sentencing court had relied on at Melton's sentencing. Melton's appeal was still pending. No party objected when the circuit court originally ordered that the first PSI report be destroyed.[2] No party contends that the first PSI report was relied on by the sentencing court. Under these unique facts, for the reasons stated below, we conclude that the circuit court did have the inherent authority to destroy the first PSI report.

¶ 12. Melton's appeal concerns the scope of judicial authority and requires us to interpret statutes. Both are matters of law subject to *de novo* review. *See State v. Jankowski*, 173 Wis. 2d 522, 526, 496 N.W.2d 215 (Ct. App. 1992) (judicial authority); *Hefty v. Strickhouser*, 2008 WI 96, ¶ 27, 312 Wis. 2d 530, 752 N.W.2d 820 (statutes).

---

[2] We do not reach the issue of whether the circuit court properly exercised its discretion when it ordered the first PSI report to be destroyed because the issue is not before us. The State apparently forfeited any appeal of that order by failing to object to it at the time it was entered. *See State v. Ndina*, 2009 WI 21, ¶ 30, 315 Wis. 2d 653, 761 N.W.2d 612. But we note that we held in *State v. Bush*, 185 Wis. 2d 716, 519 N.W.2d 645 (Ct. App. 1994), "that courts should not exercise their jurisdiction to correct PSI[] [reports] for reasons solely related to the Department of Corrections administration." *Id.* at 724.

¶ 13. "It is beyond dispute that circuit courts have 'inherent, implied and incidental powers.' " *State v. Henley*, 2010 WI 97, ¶ 73, 328 Wis. 2d 544, 787 N.W.2d 350 (citation omitted). Inherent powers enable the "courts to accomplish their constitutionally and legislatively mandated functions." *Id.* Wisconsin courts generally exercise their "inherent authority in three areas: (1) to guard against actions that would impair the powers or efficacy of the courts or judicial system; (2) to regulate the bench and bar; and (3) to ensure the efficient and effective functioning of the court, and to fairly administer justice." *Id.* "A power is inherent when it 'is one without which a court cannot properly function.' " *Id.* (citation omitted). Thus, the issue before us is whether, under the facts here, the circuit court had the inherent authority to destroy the first PSI report.

¶ 14. The primary purpose of a PSI report is to assist the circuit court at sentencing. Wis. Admin. Code § DOC 328.27(1) (Dec. 2006). The presentence investigation statute permits, but does not require, a circuit court to order the DOC to prepare a PSI report after a felony conviction. Wis. Stat. § 972.15(1) (2009–10).[3] PSI reports are "designed to assist the sentencing court in determining the appropriate sentence for that defendant and the public," *State v. Crowell*, 149 Wis. 2d 859, 868, 440 N.W.2d 352 (1989), and are to remain confidential after sentencing, *see* § 972.15(4). The circuit court's authority and use of a PSI report is necessarily confined to sentencing purposes. *See State v. Anderson*, 222 Wis. 2d 403, 411, 588 N.W.2d 75 (Ct. App. 1998) ("A

_____

[3] All references to the Wisconsin Statutes are to the 2009–10 version.

PSI [report] represents an important source of guidance for a trial court in a sentencing proceeding."); *see also* § DOC 328.27(1) (The "primary purpose" of the PSI report "is to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision.").

■

¶ 15.　However, the PSI report is not for the sentencing court's use alone. After sentencing, the DOC is permitted to "use the [PSI report] for correctional programming, parole consideration or care and treatment of any person sentenced to imprisonment," WIS. STAT. § 972.15(5), and "to make the report 'available to other agencies or persons to use for purposes related to correctional programming, parole consideration, care and treatment, or research,' " *State ex rel. Hill v. Zimmerman*, 196 Wis. 2d 419, 426, 538 N.W.2d 608 (Ct. App. 1995) (citing § 972.15(5)).

■■

¶ 16.　"A defendant has a due process right to be sentenced on the basis of true and correct information." *Anderson*, 222 Wis. 2d at 408. Thus, where a defendant challenges the accuracy of the information in the PSI report prior to sentencing, we have held that the defendant is entitled to an evidentiary hearing. *See id.* ("One means of safeguarding the defendant's right to be sentenced on the basis of accurate information is to give the defendant and his or her counsel access to the PSI [report] and an opportunity to refute allegedly inaccurate information."). At the conclusion of such an evidentiary hearing, the circuit court must make findings of fact and credibility. *Id.* at 412 ("[T]he trial court has an important factfinding role to perform if facts relevant

to the sentencing decision are in dispute. In that setting, the sentencing court must resolve such disputes.").

¶ 17. However, requiring the circuit court to make clear findings resolving factual-inaccuracy challenges to the PSI report for the purpose of *sentencing* is not the same as requiring the circuit court to amend the PSI report for the purpose of *post-sentencing* use of the PSI report *by the DOC*. We noted in *State v. Bush*, 185 Wis. 2d 716, 519 N.W.2d 645 (Ct. App. 1994),[4] that the circuit court had the power to correct inaccuracies in the PSI report for the purpose of sentencing, but that it is bad policy to require the circuit court to correct the PSI report for purposes other than sentencing, such as for later DOC use of the report. *Id.* at 724 ("We conclude that policy principles and considerations of judicial administration dictate that courts should not exercise their jurisdiction to correct PSI[] [reports] for reasons solely related to the Department of Corrections administration.").

¶ 18. Here, the State relies on the above language from *Bush* to argue that the circuit court lacked inherent authority to destroy the first PSI report because Melton's sentencing was completed. However, *Bush* is distinguishable for several reasons. While holding that the presentence investigation statute conveyed no express authority to strike a PSI report, we explicitly stated in *Bush* that we were not reaching the issue of whether the court had the inherent authority to do so. *Id.* at 722. Furthermore, we affirmed the circuit court's refusal to strike the PSI report in *Bush* on entirely

---

[4] We stated in *Bush* that "the [circuit] court could have appropriately ordered the inaccuracies stricken from the PSI [report] at the sentence modification hearings." *Id.*, 185 Wis. 2d at 724 n.1.

different grounds than those presented here, namely, the circuit court's proper exercise of discretion to refuse jurisdiction on public policy grounds.[5] *Id.* at 722–23 (" '[A] court having jurisdiction can decline to exercise it if there are sufficient policy reasons to do so.' ") (brackets in *Bush*; citation omitted). And unlike Melton, Bush requested modification of the PSI report for the purposes of DOC programming, not sentencing. *Id.* at 720–21.

¶ 19. Unlike the circuit court in *Bush*, here the circuit court expressly stated that it lacked the inherent authority to destroy the first PSI report and gave no public policy reasons. The circuit court's reasoning for concluding that it lacked inherent authority was limited to saying that it thought destroying the first PSI report was "inappropriate." We will search the record on review to see if some other basis for the circuit court's conclusion appears. *See Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶ 11, 305 Wis. 2d 658, 741 N.W.2d 256.

¶ 20. The circuit court stated:

THE COURT: Good morning. Had this hearing I believe put on by me a few weeks ago for today's date because there was a, an order by my predecessor that was ordering that the presentence investigation report dated November 19th, 2009, be sealed and then destroyed following the expiration of appellate time limits. And I believe that there is no authority for destroying it. And that that is why we have it here.

Looking through the statutes, keeping it confiden-

---

[5] We concluded in *Bush* that the circuit court had properly relied on the public policy favoring efficient judicial administration in determining that "[a]llowing defendants to repeatedly seek corrections of their PSI[] [reports] *for reasons unrelated to sentence modification* would result in a flood of litigation in the trial courts." *Id.*, 185 Wis. 2d at 723 (emphasis added).

tial is what is envisioned by the statute, and the Court didn't want to just go contrary to that order without having a hearing about it. Does somebody read the statutes differently than that, or see other authority for destroying a presentence investigation report?

¶ 21. Defense counsel responded that Melton's appeal was pending and therefore it was premature to decide whether the first PSI report should be destroyed. The State said nothing. The circuit court then modified the order for destruction of the first PSI report, stating that "it would be inappropriate to destroy it."

¶ 22. The circuit court did not articulate any public policy reasons for rejecting Melton's request to destroy the entire PSI report, nor does the record reveal any. Rather, the circuit court concluded only that it lacked inherent authority to order the PSI report destroyed. We do not agree.[6] The circuit court has the authority to destroy the first PSI report to prevent confusion as to which PSI report in the file should be used for sentencing. Courts exercise inherent authority "to ensure the efficient and effective functioning of the court, and to fairly administer justice." *See Henley*, 328 Wis. 2d 544, ¶ 73.

---

[6] Indeed, contrary to having no inherent authority to destroy a PSI report, we have held that it was error for a circuit court not to strike a PSI report where the report's writer was biased against the defendant by virtue of her marriage to the prosecutor. *See State v. Suchocki*, 208 Wis. 2d 509, 520, 561 N.W.2d 332 (Ct. App. 1997), *abrogated on other grounds by State v. Tiepelman*, 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1 ("We, therefore, conclude that the marital relationship is sufficient in itself to draw into question the objectivity of the PSI [report] without a demonstration of actual bias by the report's author. As a result the [circuit] court erred in not striking the PSI [report].").

¶ 23. It is true that at the time the circuit court modified the order to destroy the first PSI report, and instead ordered that the report be sealed, the original sentencing was completed. However, Melton's appeal was still pending and the potential existed for resentencing. There were two sealed PSI reports in the file, the first report that had been ordered destroyed, and the second report, on which the sentencing court relied. The existence of two PSI reports in a file presents an opportunity for confusion and injustice. Even if clearly labeled, the possibility exists that at resentencing the "wrong" PSI report would be used. Even without considering the DOC's subsequent use of the PSI reports, it would be reasonable for a circuit court to conclude that the "wrong" PSI report should be destroyed to prevent misuse. That is certainly a matter of efficient judicial administration and fairness at a potential resentencing, and as such, is within a circuit court's inherent powers. *See id.*

¶ 24. Under the facts here, we conclude that the circuit court had the inherent authority to destroy the first PSI report.

*By the Court.*—Order reversed.